# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDY GOTTLIEB AND LORNA CHAND, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, <br>     *Plaintiffs*, <br><br> v. <br><br> NED LAMONT, GOVERNOR OF THE STATE OF CONNECTICUT, & DENISE MERRILL, SECRETARY OF THE STATE OF CONNECTICUT, <br>     *Defendants*. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | <br><br><br><br><br> Civil Action No: 3:20-cv-00623 <br><br> *Declaratory and* <br> *Injunctive Relief Requested* <br><br> May 6, 2020 |

## CLASS ACTION COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1. This is a civil rights action challenging Connecticut state law requirements to (1) collect in-person signatures to access the ballot for the August 11, 2020 primary election; and (2) use in-person ballots for the August 11 primary and the November 3 general elections, with few exceptions that exclude Plaintiffs and thousands of other voters. Plaintiffs, for themselves and a class of all Connecticut voters whose rights are at risk, seek a declaratory judgment that the requirements are violations of the Constitution of the United States, especially given COVID-19, and seek injunctive relief should Defendants fail to remedy the alleged constitutional violations promptly.

2. Connecticut is facing the worst pandemic in modern history. Connecticut has among the strictest ballot access and absentee voting laws in the country. Without action by Defendants or this Court's intervention, the combination of Connecticut's strict ballot access and absentee voting laws and the COVID-19 pandemic will place an unconstitutional severe undue burden on voters seeking to vote for the candidate of their choice.

3.      Unless remedied, Plaintiffs and thousands of Connecticut voters will have their choice of primary candidate unduly and unjustifiably restricted by Connecticut's Ballot Access Laws, *infra* pp. 4-6, which can require thousands of signatures on paper petitions for candidates to access the ballot.

4.      Unless remedied, Connecticut's Absentee Ballot Laws, *infra* p. 6, will give Plaintiffs and thousands of Connecticut voters a stark choice in the primary and general elections: either risk infection from a dangerous disease by voting in person; vote by mail utilizing the excuses provided for under state law and risk criminal prosecution for false statement; or be disenfranchised.

5.      Recent events in Wisconsin demonstrate the disarray and voter confusion that results from inadequately planned elections held during a pandemic. As the Supreme Court of the United States has stated, "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). Plaintiffs, Connecticut voters, thus file this suit to force action at the earliest possible time.

**A.     Parties**

6.      Plaintiff Andy Gottlieb is a citizen of the State of Connecticut and a registered voter. Plaintiff Gottlieb wants to vote for a wider variety of candidates, but he is restricted from doing so by Connecticut's Ballot Access Laws. Plaintiff ran for state senate in 2018 but he fell short of ballot access by 32 signatures because of the Ballot Access Laws. Plaintiff would likely run again for state representative or state senator, but for the existence and likely enforcement of the Ballot Access Laws.  Plaintiff Gottlieb also believes it is his duty as a conscientious citizen

to protect his own safety and the safety of others by voting by mail, but he is restricted from doing so by Connecticut's Absentee Ballot Laws.

7. Plaintiff Lorna Chand is a citizen of the State of Connecticut and a registered voter. Plaintiff Chand wants to vote for a wider variety of candidates, but she is restricted from doing so by Connecticut's Ballot Access Laws. Plaintiff Chand was Plaintiff Gottlieb's treasurer in the 2018 election, and was prevented from voting for the candidate of her choice, Plaintiff Gottlieb, because of the Ballot Access Laws. Plaintiff Chand is a frontline essential worker and believes it is her duty to protect her own safety and the safety of others by voting by mail, but she is restricted from doing so by Connecticut's Absentee Ballot Laws.

8. Defendant Ned Lamont is the Governor of the State of Connecticut and its chief executive officer. Because he has declared a public health emergency, he has the right to modify or suspend any Connecticut statute, Conn. Gen. Stat. Sec. 28-9, but his emergency powers may expire before the November election, *id.* He is sued in his official capacity.

9. Defendant Denise Merrill is the Secretary of the State of Connecticut. She is Connecticut's chief election official and is responsible for causing petitions for access to the ballot to issue under Connecticut State Law. She is sued in her official capacity.

**B.    Jurisdiction**

10. Because this action is brought pursuant to 42 U.S.C. § 1983, jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

11. Venue is proper in this Court by virtue of 28 U.S.C. § 1391 because the events giving rise to the claims occurred in the District of Connecticut and the defendants reside in the District of Connecticut.

12. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, as well as by Rules 23, 57 and 65 of the Federal Rules of Civil Procedure.

**C.   Factual Allegations**

    **a)   Ballot Access Laws**

13. Connecticut General Statutes Section 9-400 allows a candidate for the office of state representative or state senator to qualify for the ballot for a political party's primary election in two ways: by receiving at least 15% of the votes of the delegates at a convention held by that political party; or by circulating a petition and obtaining the signatures of five percent of the enrolled members of the party in the district.

14. The gathering of petition signatures is governed by Connecticut General Statutes Sections 9-404a to 9-404c, inclusive. Candidates are given until 4:00p.m. on the fourteenth day after petitions are made available to collect and submit signatures from five percent of the party members in the district.

15. In 2018, Plaintiffs were the candidate and the treasurer, respectively, of a campaign for state senate that failed to qualify for the ballot by convention and was required to collect the signatures of 1,014 registered Democrats, five percent of the registered Democrats in the district.

16. Plaintiffs' campaign turned in 1,120 signatures, of which 982 were found to be valid, 32 signatures short of ballot access.[1]

---

[1] Plaintiffs were 32 signatures short, according to the count of the registrars of voters in the municipalities of the district in which they were seeking office, Connecticut's Twelfth Senate District, comprising the towns of Madison, Guilford, Killingworth, Durham, Branford, and North Branford. However, upon information and belief, employees of Defendant Merrill sought to disqualify additional signatures, because the back of some of the pages of the petitions were allegedly incorrectly filled out by one of Plaintiffs' petition circulators.

17. Plaintiffs would have had enough signatures to run for governor of Ohio, member of Congress from Pennsylvania, or U.S. Senator from Oregon, but Plaintiffs were denied ballot access in the party primary. As a result, the candidate endorsed at convention ran unopposed.

18. Plaintiffs seek to prevent the unconstitutional operation of the Ballot Access Laws from again denying voters the right to vote for the candidate of their choice. Time is short. In the upcoming election, currently, petitions will be made available by the Secretary of the State on May 26, and must be turned in to the Secretary of the State's office by June 9 at 4:00p.m.

19. The difficulty of obtaining so many signatures in so short a time is compounded by other arcane elements of Connecticut's ballot access laws. As one example, no page of any petition may contain the names of enrolled political party members residing in different towns, requiring petition circulators to carry around separate packs of paper for each of the towns in multi-town districts. Conn. Gen. Stat. Sec. 9-404b(c).

20. And crucially for this case, petition circulators must attest, under penalties of false statement, "that each person whose name appears on the page signed the petition *in person in the presence of the circulator*, . . . ." *Id* (emphasis added).

21. The Ballot Access Laws do not burden all political groups equally.

22. Because incumbents have a well-developed network of campaign contributors, supporters well-versed in the process, the loyalty of party bosses, and the advantages of their official office, they almost always garner more than 15% of the delegates at state conventions and rarely need to gather signatures at all.

23. On the other hand, new candidates who are either challenging incumbents or running for a vacant seat – and who already face an uphill battle in getting on the ballot – must often collect thousands of signatures in order to qualify for ballot access.

24. Because incumbents, in particular, are advantaged by the Ballot Access Laws, voters' right to vote for the candidate of their choice is severely restricted. When incumbents are more difficult to challenge, more run unopposed. Unopposed elections are very common in Connecticut, much more common than in places with less restrictive Ballot Access Laws.

    **b)**     **Absentee Ballot Laws**

25. Connecticut voters are allowed to vote by mail-in absentee ballot only under six specific circumstances outlined in Connecticut statute: (1) active military service; (2) absence from one's town of residence "during all of the hours of voting," which in Connecticut is 6:00a.m. to 8:00p.m.; (3) his or her illness; (4) his or her physical disability; (5) religious reasons; or (6) service as a poll worker other than in one's town. Conn. Gen. Stat. Sec. 9-135.

26. Neither Plaintiff is eligible for absentee voting under the statute.

27. False statement on an application for an absentee ballot is a class D felony under Connecticut law. Conn. Gen. Stat. Sec. 9-359a.

    **c)**     **COVID-19**

28. "Social distancing" measures will likely remain in effect in some form at the time of the May 26—June 9, 2020 petition gathering period, at the time of the August 11, 2020 primary, and at the time of the November 3, 2020 general election. Even if federal, state, and local "social distancing" protocols are lifted, public health officials warn that in all likelihood such protocols could be re-imposed during another wave of COVID-19.

29. Public health researchers have concluded that there will be significant barriers to wide-scale in-person voting even in August and November 2020.

30. Defendant Lamont has postponed Connecticut's presidential primary from April 28, 2020 to August 11, 2020, an admission of the severe burden that COVID-19 imposes on voters and the impossibility of maintaining a free and fair election without the ability to vote by mail, which most voters, like the Plaintiffs, cannot do because of the Absentee Ballot Laws.

31. Defendant Merrill has announced that she will mail an absentee ballot application to every voter in advance of the August 11, 2020 primary election.

32. Additionally, Defendant Merrill has requested that Defendant Lamont use his emergency powers to modify the Absentee Ballot Laws, but as of the time of this filing, he has failed to do so. But upon information and belief, Defendant Merrill has not made any public request regarding the Ballot Access Laws.

33. As Defendant Merrill has admitted, "[w]e are on the precipice of disaster" regarding the conduct of the upcoming elections. Plaintiffs bring this action to guarantee the right to vote for themselves and their fellow citizens amid the chaos and uncertainty of the pandemic.

34. Circulating petitions for signature is not listed as an "essential business" under any of Defendant Lamont's emergency public health orders. The health crisis coupled with the Defendant's stay-at-home orders make it impossible to gather enough signatures in enough time for candidates with significant support to access the ballot unless they attain the support of 15% of party delegates at a convention. This will, unless remedied, severely restrict the ability of Plaintiffs and other voters to vote for the candidate of their choice.

### d) Special Grounds for Injunctive Relief

35. This Court concluded, almost twenty years ago, that the 15% convention delegate requirement, standing alone, likely fails to protect rights of free association of voters seeking to vote for the candidate of their choice. *Campbell v. Bysiewicz*, 213 F. Supp. 2d 152 (D.Conn. 2002) (Dorsey, J.). The remedy in that case came when the General Assembly created the ability to gather petition signatures. But the health crisis renders that remedy meaningless without further relief.

36. Without action, nearly every voter in Connecticut will face a legally significant increased burden on their voting rights and their associational rights amid the COVID-19 pandemic. Defendants' continued inaction will force voters to choose from a more restricted set of candidates. Defendants' continued inaction will force voters to choose risking infection or being disenfranchised.

37. This case must proceed quickly before the *Purcell* deadline established by the Supreme Court. Each day that passes increases the risk of voter confusion in the August 11 and November 3 elections. Plaintiffs, from their experience in 2018, understand close calls and the need for urgent action. A real and actual controversy exists between the parties, Plaintiffs have no actual remedy at law other than this action, and Plaintiffs will suffer irreparable harm until they obtain relief from this Court.

### D. Class Allegations

38. Plaintiffs bring this case on their own behalf and on behalf of a class of all Connecticut voters, including a subclass of voters ineligible to receive absentee ballots under the Absentee Ballot Laws.

39. The class consists of over a million people and is so numerous that joinder of all members is impracticable.

40. Plaintiffs' claims are common to and typical of the class and subclass, that is, the ability of all members of the class to vote for candidates of their choice is burdened by Connecticut's Ballot Access Laws, and all the right to vote of all members of the subclass is burdened by Connecticut's Absentee Ballot Laws.

41. Plaintiffs and their counsel will fairly and adequately protect the interests of the class and subclass. No conflicts of interest exist between Plaintiffs or their counsel and the class or subclass. Plaintiffs' counsel, Attorney Alexander T. Taubes, Esq., has done substantial work in identifying and investigating potential claims in this action; has experience in handling class actions, *Noble v. Northland*, UWY-CV16-6033559-S (Conn. Super. Ct.) (class counsel through investigation, discovery, motion practice, class certification, and settlement of class action on behalf of approximately 1,000 former residents of a New Haven public housing complex), other complex litigation, and the types of claims asserted in the action, *Pereira v. State Elections Enforcement Commission*, HHB-CV19-6054160-S (Conn. Super. Ct.) (declaratory judgment action regarding Connecticut campaign finance law); has knowledge of the applicable law; and resources that he will commit to representing the class and subclass.

42. Defendant Lamont and Defendant Merrill have acted or refused to act on grounds that apply generally to the class and subclass, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class and subclass as a whole.

### D. Claims for Relief

**First Claim: Unconstitutional Abridgment of the First and Fourteenth Amendments to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983 and *Campbell v. Bysiewicz*, for Enforcement of the Ballot Access Laws**

43. The allegations above are incorporated as if included fully here.

44. Even without the circumstances created by the COVID-19 pandemic, Connecticut's ballot access laws unduly burden and violate Plaintiffs' right to petition, speech, and free association protected by the First and Fourteenth Amendments to the Constitution of the United States, including by having a "chilling effect" on the ability of individuals such as Plaintiff Gottlieb to run for office in the first place.

45. Under the circumstances of the pandemic, enforcement of the Ballot Access Laws will violate the Constitution as applied. The requirements of the Ballot Access Laws are not only difficult to achieve on their face, but unsafe and impossible amid the pandemic. If undisturbed, enforcement of the Ballot Access Laws will unduly and unjustifiably restrict Plaintiffs' First and Fourteenth Amendment rights.

46. The Ballot Access Laws trigger strict scrutiny because of the burden they impose on Plaintiffs' associational rights, scrutiny that the Ballot Access Laws cannot survive. But under the circumstances of this case, including federal, state, and local shelter-in-place orders amid the COVID-19 pandemic, the Ballot Access Laws fail even rational basis review.

**Second Claim: Unconstitutional Abridgment of the First and Fourteenth Amendment to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983, for Enforcement of the Absentee Ballot Laws**

47. The allegations above are incorporated as if included fully here.

48. Voting and participating in the electoral process is a form of expression which is the ultimate form of political speech. In light of the Supreme Court's cases giving strong First

Amendment protection to campaign funds spent to influence voters, the voters and their votes themselves can hardly be entitled to less protection.

49. As a restriction on free speech and association, the Absentee Ballot Laws must therefore be judged under the standard of strict scrutiny, a scrutiny that the Absentee Ballot Laws cannot survive under ordinary circumstances, much less under the extraordinary circumstances of the COVID-19 pandemic.

50. Restricting access to absentee ballots only to the six identified categories in Connecticut law is not necessary or narrowly-tailored to any compelling state interest.

**Third Claim: Violation of Procedural Due Process for Vagueness in Violation of the Fourteenth Amendment to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983, for Enforcement of the Absentee Ballot Laws**

51. The allegations above are incorporated as if included fully here.

52. Should Defendant Lamont fail to act to expand absentee ballot eligibility, thousands of voters will be mailed absentee ballot applications by Defendant Merrill, which they will be ineligible to complete. Completing the applications falsely could subject the voters to criminal prosecution.

53. A restriction to the right to vote due to the vagueness of a statutory provision creates conditions on the right to vote that violates voters' Due Process rights.

54. The Absentee Ballot Laws violate Plaintiffs and other voters' Due Process rights because the law, under the circumstances, fails to provide people of ordinary intelligence with a reasonable opportunity to understand whether or not they are permitted to vote by mail during the COVID-19 pandemic.

55. The Absentee Ballot Laws also violate Plaintiffs and other voters' Due Process rights because the confusion that results amid the pandemic may encourage arbitrary and

11

discriminatory enforcement, bar access to the right to vote, and increase the risk of criminal prosecution.

**Fourth Claim: Violation of the Fourteenth Amendment to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983, for Enforcement of the Absentee Ballot Laws**

56. The allegations above are incorporated as if included fully here.

57. The Absentee Ballot Laws violate the Fourteenth Amendment Equal Protection Clause because the state allows some voters to access absentee ballots but not others, treating similarly situated voters differently. Because of the pandemic, Plaintiffs are similarly situated to voters who are eligible for absentee ballots, but Plaintiffs are denied eligibility to vote absentee by Connecticut's Absentee Ballot Laws.

58. No rational interest exists in putting citizens' health at risk in voting, rendering the state's activities in enforcing the Absentee Ballot Laws unconstitutional.

**E.     Prayer for Relief**

WHEREFORE, the plaintiff respectfully requests the following relief:

A. Certification under 28 U.S.C. §2403 and Fed. R. Civ. P. 5.1 that the constitutionality of a state statute has been questioned;

B. Certification of a class and subclass under Fed. R. Civ. P. 23(b)(2);

C. Declaratory judgment that enforcement of the Absentee Ballot Laws and Ballot Access Laws described above violate the Plaintiffs' rights under the Constitution of the United States as guaranteed by 42 U.S.C. § 1983, and an order allowing Defendants a reasonable but prompt amount of time to correct the violations;

D. In the event that a reasonable time elapses and no action is taken, an order in the nature of an injunction relieving the unconstitutionally unacceptable burdens imposed by the enforcement of the Absentee Ballot Laws and Ballot Access Laws;

E. Attorney's fees pursuant to 42 U.S.C. § 1988, and costs; and

F. Such other and further relief as the Court may deem proper.

Dated: May 6, 2020                                  Respectfully Submitted,

PLAINTIFFS, ANDY GOTTLIEB AND
LORNA CHAND, FOR THEMSELVES
AND ALL OTHERS SIMILARLY
SITUATED



By:_____/s/_____
Alexander T. Taubes, Esq.
Federal Bar No.: ct30100
Alexander T. Taubes
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com

*Their Attorney*