**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ANDY GOTTLIEB, et al.,                                  :
                                                        :          Case No. 3:20-cv-623-JCH
        *Plaintiffs,*                                   :
                                                        :
        v.                                              :
                                                        :
NED LAMONT, et al.,                                     :
                                                        :
        *Defendants.*                                   :          May 12, 2020

**FIRST AMENDED CLASS ACTION COMPLAINT**
**FOR DECLARATORY & INJUNCTIVE RELIEF**

1.      This civil rights class action was brought May 6, 2020 to address impending

violations of the First Amendment by Defendants' threatened enforcement, despite the COVID-

19 pandemic, of Connecticut's strict state law requirements to (1) collect in-person petition

signatures for ballot access and (2) vote in-person at polling places unless voters meet one of six

statutory "excuses" that exclude thousands of voters including Plaintiffs.

2.      On May 11, 2020, Defendant Governor Ned Lamont issued Executive Order

7LL, making changes to Connecticut's petitioning process for ballot access, but not the process

for obtaining absentee ballots.

3.      As Defendant Lamont's executive order says, COVID-19 is a highly contagious

respiratory disease that has caused a pandemic resulting in mass severe illness and death,

especially for individuals who are 60 or older or for those with chronic health conditions, and

public health experts have concluded that it is possible to transmit COVID-19 even before a

person shows symptoms and through aerosol transmission.

4.      As Defendant Lamont further stated, to reduce the spread of COVID-19, the U.S.

CDC and the CT DPH have recommended implementation of community mitigation strategies

to slow transmission of the virus, including cancellation of gatherings of ten people or more and social distancing in smaller settings.

5.      Defendant Lamont further stated that there exists a compelling interest in reducing the risk of transmission of COVID-19 among candidates seeking election, their supporters who are seeking to contact potential voters, and the public at large.

6.      Defendant Lamont admitted that the COVID-19 pandemic makes it more difficult for candidates to meet the existing statutory petitioning requirements to qualify for ballot access because fewer people are going outside or to public places and some people may be less willing to have in-person interactions with candidates or their supporters. Defendant Lamont omitted that his "stay home, stay safe" executive orders also fail to list petition signature gathering as an essential business or activity.

7.      Defendant Lamont admitted that in-person interactions needed under the petitioning statutes may further the potential transmission of COVID-19 during an ongoing public health emergency.

8.      However, Defendant Lamont's executive order fails to remedy the problem that it recognizes. In fact, it requires candidates to handle *thousands of additional pages of paperwork* in order to qualify for the ballot, more paper than candidates would have required if the old petitioning requirements were left in place.

9.      Defendant Lamont's order introduces a cumbersome new mechanism for collecting in-person petition signatures *that are still required to be signed by hand* and will require hundreds of in-person interactions or a massive mailing using U.S. mail that would cost thousands of dollars and still risk meeting the deadline, which has been extended *only two days*.

10.     Specifically, Defendant Lamont's cumbersome new mechanism requires the following:

> (i) an enrolled party member signs a petition containing only his or her signature that is mailed by U.S. mail to the candidate and later to the registrar of the municipality by the applicable deadline; or (ii) an enrolled party member signs a petition containing only his or her signature, which signature may be scanned or photographed electronically and sent by electronic mail to the candidate and later to the registrar of the municipality by the applicable deadline along with a copy of the email demonstrating the electronic transmission of the petition by the enrolled party member. Any petition submitted in accordance with subdivisions (i) or (ii) of this subsection shall contain the information required under sections 9-404a through 9-404c, and 9-406, 9-409 and 9-410 of the General Statutes and shall include a statement by the enrolled party member attesting to his or her identity, qualification as an elector and enrolled party member and shall be signed under the penalties of false statement.  If more than one signature is on a petition page, all the requirements of sections 9-404b and 9-410 of the General Statutes must be satisfied, provided that any existing Executive Orders governing remote notarizations may be utilized. Nothing in this Order shall preclude petitioning by any other means set forth in sections 9-404a through 9-404c of the General Statutes.

11.     This cumbersome new mechanism requires petitions to be mailed or dropped off at voters' homes unless the candidate has the email address of a voter with a printer and a scanner or photographic device with email capability. Voters are then required to mail, scan and email, or leave the signed petition at their homes for candidates to pick up. Each voter must use their own piece of paper for their own petition, resulting in an explosion of paper forms not previously required to be individually printed for each voter. This procedure is more difficult than it was to go door-to-door to collect signatures before COVID-19. It is a mess.

12.     Although this cumbersome new mechanism was introduced just days before petition signatures are required to be collected, the number of signatures required has been reduced only thirty percent under Defendant Lamont's order, a paltry discount given the difficulties the order necessarily entails. For candidates running for the district offices of state representative or state senator, that will be 3.5% of all registered party members in the district,

down from 5% of all registered party members under the old system. This will still require in excess of 500 signatures from registered Democrats in many districts. It is likely impossible.

13.     The governor's order gives candidates only two extra days to collect the petitions of 3.5% of all registered party members in the district. Plaintiffs would need at least an extra month to gather so many signatures given (1) COVID-19, (2) Defendant Lamont's "stay home, stay safe" orders, and (3) the cumbersome new mechanism for obtaining the signatures under the latest executive order. It is completely unreasonable.

14.     After Defendant Lamont issued his order, counsel for the Defendants emailed it to counsel for the Plaintiffs. Counsel then met and conferred by phone regarding the instant litigation. Counsel for the Defendants represented that Defendant Lamont's order was final, and represented that this Court was the only available avenue for Plaintiffs to seek relief, inviting this amended complaint and emergency motion practice.

15.     Without this Court's intervention, Connecticut's still-strict ballot access laws as well as its absentee voting laws—which remain unchanged—will place an unconstitutional severe undue burden on candidates running for office and voters seeking to vote for the candidate of their choice, given the ongoing COVID-19 pandemic.

16.     Recent events in Wisconsin demonstrate the disarray and voter confusion that results from inadequately planned elections held during a pandemic. As the Supreme Court of the United States has stated, "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). Plaintiffs, Connecticut voters, thus file this suit to force action at the earliest possible time.

**A.      Parties**

17.      Plaintiff Andy Gottlieb is a citizen of the State of Connecticut and a registered voter. Plaintiff Gottlieb wants to vote for a wider variety of candidates, but he is restricted from doing so by Connecticut's Ballot Access Laws, even as modified by Defendant Lamont's executive order. Plaintiff ran for state senate in 2018 but he fell short of ballot access by 32 signatures because of the Ballot Access Laws. Plaintiff would likely run again for state representative or state senator, but for the existence and likely enforcement of the Ballot Access Laws as modified by Defendant Lamont's executive order.  Plaintiff Gottlieb also believes it is his duty as a conscientious citizen to protect his own safety and the safety of others by voting by mail, but he is restricted from doing so by Connecticut's Absentee Ballot Laws.

18.      Plaintiff Lorna Chand is a citizen of the State of Connecticut and a registered voter. Plaintiff Chand wants to vote for a wider variety of candidates, but she is restricted from doing so by Connecticut's Ballot Access Laws as modified by Defendant Lamont's executive order. Plaintiff Chand was Plaintiff Gottlieb's treasurer in the 2018 election, and was prevented from voting for the candidate of her choice, Plaintiff Gottlieb, because of the Ballot Access Laws. Plaintiff Chand is a frontline essential worker and believes it is her duty to protect her own safety and the safety of others by voting by mail, but she is restricted from doing so by Connecticut's Absentee Ballot Laws.

19.      Plaintiff Jason W. Bartlett is a citizen of the State of Connecticut and a registered voter. Plaintiff Bartlett is a candidate for the 10th State Senate District of the Connecticut General Assembly with significant support, but he is unlikely to obtain ballot access by state party convention. Because he is unlikely to obtain ballot access by convention, and Defendant Lamont's executive order fails to relieve the significant burden of gathering in-person petition

signatures, Plaintiff Bartlett will be precluded from ballot access unless action is taken by this

Court. Each day that passes without action hinders Plaintiff Bartlett's campaign for public

office, because even if an alternative form of petition gathering is created, the time for planning

and organizing the logistics of a significant ballot access drive is limited in advance of the

August 11 primary, and rapidly elapsing.

20.     Plaintiff Richard Lacourciere is a citizen of the State of Connecticut and a

registered voter. Plaintiff Lacourciere is a candidate for the 24th State Representative District of

the Connecticut General Assembly with significant support, but he is unlikely to obtain ballot

access by state party convention. Because he is unlikely to obtain ballot access by convention,

and Defendant Lamont's executive order fails to relieve the significant burden of gathering in-

person petition signatures, Plaintiff Lacourciere will be precluded from ballot access unless

action is taken by this Court. Each day that passes without action hinders Plaintiff Lacourciere's

campaign for public office, because even if another alternative form of petition gathering is

created, the time for planning and organizing the logistics of a significant ballot access drive is

limited in advance of the August 11 primary, and rapidly elapsing.

21.     Defendant Ned Lamont is the Governor of the State of Connecticut and its chief

executive officer. Because he has declared a public health emergency, he has the right to modify

or suspend any Connecticut statute, Conn. Gen. Stat. Sec. 28-9, but his emergency powers may

expire before the November election, *id.* He is sued in his official capacity.

22.     Defendant Denise Merrill is the Secretary of the State of Connecticut. She is

Connecticut's chief election official and is responsible for causing petitions for access to the

ballot to issue under Connecticut State Law. She is sued in her official capacity.

**B.      Jurisdiction**

23.      Because this action is brought pursuant to 42 U.S.C. § 1983, jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

24.      Venue is proper in this Court by virtue of 28 U.S.C. § 1391 because the events giving rise to the claims occurred in the District of Connecticut and the defendants reside in the District of Connecticut.

25.      Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, as well as by Rules 23, 57 and 65 of the Federal Rules of Civil Procedure.

**C.      Factual Allegations**

**a)      Ballot Access Laws**

26.      Connecticut General Statutes Section 9-400 allows a candidate for the office of state representative or state senator to qualify for the ballot for a political party's primary election in two ways: by receiving at least 15% of the votes of the delegates at a convention held by that political party; or by circulating a petition and obtaining the signatures of five percent of the enrolled members of the party in the district.

27.      The gathering of petition signatures is governed by Connecticut General Statutes Sections 9-404a to 9-404c, inclusive. Candidates are given until 4:00p.m. on the fourteenth day after petitions are made available to collect and submit signatures from five percent of the party members in the district.

28.      In 2018, Plaintiff Gottlieb and Plaintiff Chand were the candidate and the treasurer, respectively, of a campaign for state senate that failed to qualify for the ballot by convention and was required to collect the signatures of 1,014 registered Democrats, five percent of the registered Democrats in the district.

29.     Plaintiff Gottlieb's 2018 campaign turned in 1,120 signatures, of which 982 were found to be valid, 32 signatures short of ballot access.[1]

30.     Plaintiff Gottlieb would have had enough signatures to run for governor of Ohio, member of Congress from Pennsylvania, or U.S. Senator from Oregon, but Plaintiff Gottlieb were denied ballot access in the party primary. As a result, the candidate endorsed at convention ran unopposed, and Plaintiffs Gottlieb and Chand were denied the opportunity to vote for the candidate of their choice, a candidate with significant support.

31.     Defendant Lamont's executive order, described above, *supra*, paragraphs 2-13, fails to eliminate the undue burden of Connecticut's Ballot Access Laws. Thus, Plaintiffs seek to modify Defendant Lamont's Executive Order No. 7LL, which will otherwise deny candidates with significant support access to the primary ballot and deny voters the right to vote for the candidate of their choice. Time is short. In the upcoming election, currently, petitions will be made available by the Secretary of the State on May 26, and must be turned in to the Secretary of the State's office by June 11 at 4:00p.m. under Defendant Lamont's order.

32.     The Ballot Access Laws, as modified by Defendant Lamont's executive order, do not burden all political groups equally.

33.     Because incumbents have a well-developed network of campaign contributors, supporters well-versed in the process, the loyalty of party bosses, and the advantages of their official office, they almost always garner more than 15% of the delegates at state conventions,

---

[1] Plaintiffs were 32 signatures short, according to the count of the registrars of voters in the municipalities of the district in which they were seeking office, Connecticut's Twelfth Senate District, comprising the towns of Madison, Guilford, Killingworth, Durham, Branford, and North Branford. However, upon information and belief, employees of Defendant Merrill sought to disqualify additional signatures, because the back of some of the pages of the petitions were allegedly incorrectly filled out by one of Plaintiffs' petition circulators.

rarely need to gather signatures at all, and need not worry about Defendant Lamont's cumbersome new mechanism for ballot access.

34.     On the other hand, new candidates who are either challenging incumbents or running for a vacant seat – and who already face an uphill battle in getting on the ballot – will need to collect hundreds of signatures in order to qualify for ballot access, amid a pandemic, using a cumbersome new method and only two days of extra time.

35.     Because incumbents, in particular, are advantaged by the Ballot Access Laws as modified by Defendant Lamont's order, voters' right to vote for the candidate of their choice is severely restricted. When incumbents are more difficult to challenge, more run unopposed. Unopposed elections are very common in Connecticut, much more common than in places with less restrictive Ballot Access Laws.

36.     Because Defendant Lamont's executive order was intentionally tailored to prevent candidates with significant support from accessing the ballot, it constitutes an intentional violation of Plaintiffs' First Amendment rights.

**b)     Absentee Ballot Laws**

37.     Connecticut voters are allowed to vote by mail-in absentee ballot only under six specific circumstances outlined in Connecticut statute: (1) active military service; (2) absence from one's town of residence "during all of the hours of voting," which in Connecticut is 6:00a.m. to 8:00p.m.; (3) his or her illness; (4) his or her physical disability; (5) religious reasons; or (6) service as a poll worker other than in one's town. Conn. Gen. Stat. Sec. 9-135.

38.     Neither Plaintiff is eligible for absentee voting under the statute.

39.     False statement on an application for an absentee ballot is a class D felony under Connecticut law. Conn. Gen. Stat. Sec. 9-359a.

**c)** **COVID-19**

40.     "Social distancing" measures will likely remain in effect in some form at the

time of the May 26—June 9, 2020 petition gathering period, at the time of the August 11, 2020

primary, and at the time of the November 3, 2020 general election. Even if federal, state, and

local "social distancing" protocols are lifted, public health officials warn that in all likelihood

such protocols could be re-imposed during another wave of COVID-19.

41.     Public health researchers have concluded that there will be significant barriers to

wide-scale in-person voting even in August and November 2020.

42.     Defendant Lamont has postponed Connecticut's presidential primary from April

28, 2020 to August 11, 2020, an admission of the severe burden that COVID-19 imposes on

voters and the impossibility of maintaining a free and fair election without the ability to vote by

mail, which most voters, like the Plaintiffs, cannot do because of the Absentee Ballot Laws.

43.     Defendant Merrill has announced that she will mail an absentee ballot

application to every voter in advance of the August 11, 2020 primary election.

44.     Additionally, Defendant Merrill has requested that Defendant Lamont use his

emergency powers to modify the Absentee Ballot Laws, but as of the time of this filing, he has

failed to do so. Defendant Merrill has also made repeated requests regarding the Ballot Access

Laws, but Defendant Lamont's action is inadequate, as summarized above.

45.     As Defendant Merrill has admitted, "[w]e are on the precipice of disaster"

regarding the conduct of the upcoming elections. Plaintiffs bring this action to guarantee the

right to vote for themselves and their fellow citizens amid the chaos and uncertainty of the

pandemic.

46.     Circulating petitions for signature is not listed as an "essential business" under any of Defendant Lamont's emergency public health orders. The health crisis coupled with the Defendant's inadequate executive order make it impossible to gather enough signatures in enough time for candidates with significant support to access the ballot unless they attain the support of 15% of party delegates at a convention. This will, unless remedied, severely restrict the ability of Plaintiffs and other voters to vote for the candidate of their choice.

      **d)     Special Grounds for Injunctive Relief**

47.     This Court concluded, almost twenty years ago, that the 15% convention delegate requirement, standing alone, likely fails to protect rights of free association of voters seeking to vote for the candidate of their choice. *Campbell v. Bysiewicz*, 213 F. Supp. 2d 152 (D.Conn. 2002) (*Dorsey, J.*). The remedy in that case came when the General Assembly created the ability to gather petition signatures. *See* Public Act 03-241 (creating petitioning system). But the health crisis and Defendant Lamont's inadequate executive order render that remedy meaningless without further relief.

48.     Without action, nearly every voter in Connecticut will face a legally significant increased burden on their voting rights and their associational rights amid the COVID-19 pandemic. Defendants' failure to take adequate action will force voters to choose from a more restricted set of candidates. Defendants' continued inaction with regard to absentee ballots will force voters to choose risking infection or being disenfranchised.

49.     This case must proceed quickly before the *Purcell* deadline established by the Supreme Court. Each day that passes increases the risk of voter confusion in the August 11 and November 3 elections. Plaintiffs, from their past experiences in the political process, understand close calls and the need for urgent action. A real and actual controversy exists between the

parties, Plaintiffs have no actual remedy at law other than this action, and Plaintiffs will suffer irreparable harm until they obtain relief from this Court.

**D.      Class Allegations**

50.     Plaintiffs bring this case on their own behalf and on behalf of a class of all Connecticut voters, including a subclass of voters ineligible to receive absentee ballots under the Absentee Ballot Laws.

51.     The class consists of over a million people and is so numerous that joinder of all members is impracticable.

52.     Plaintiffs' claims are common to and typical of the class and subclass, that is, the right of all members of the class to vote for candidates of their choice is burdened by Connecticut's Ballot Access Laws as modified by Defendant Lamont's executive order, and the right to vote of all members of the subclass is burdened by Connecticut's Absentee Ballot Laws.

53.     Plaintiffs and their counsel will fairly and adequately protect the interests of the class and subclass. No conflicts of interest exist between Plaintiffs or their counsel and the class or subclass. Plaintiffs' counsel, Attorney Alexander T. Taubes, Esq., has done substantial work in identifying and investigating potential claims in this action; has experience in handling class actions, *Noble v. Northland*, UWY-CV16-6033559-S (Conn. Super. Ct.) (class counsel through investigation, discovery, motion practice, class certification, and settlement of class action on behalf of approximately 1,000 former residents of a New Haven public housing complex), other complex litigation, *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 473 (2d Cir. 2019) (argued and briefed Defendants' unsuccessful interlocutory appeal on justiciability grounds in novel reapportionment claim), and the types of claims asserted in the action, *Pereira v. State Elections Enforcement Comm'n*, HHB-CV19-6054160-S (Conn. Super.

Ct.) (declaratory judgment action regarding Connecticut campaign finance law); has knowledge of the applicable law; and resources that he will commit to representing the class and subclass.

54.     Defendant Lamont and Defendant Merrill have acted or refused to act on grounds that apply generally to the class and subclass, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class and subclass as a whole.

**E.     Claims for Relief**

**First Claim: Unconstitutional Abridgment of the First and Fourteenth Amendments to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983 and *Campbell v. Bysiewicz*, for Enforcement of the Ballot Access Laws as Modified by Defendant Lamont's Executive Order 7LL**

55.     The allegations above are incorporated as if included fully here.

56.     Even without the circumstances created by the COVID-19 pandemic, Connecticut's ballot access laws unduly burden and violate Plaintiffs' right to petition, speech, and free association protected by the First and Fourteenth Amendments to the Constitution of the United States, including by having a "chilling effect" on the ability of individuals such as Plaintiff Gottlieb to run for office in the first place.

57.     Defendant Lamont's Executive Order No. 7LL, while containing admissions of the severe burden on petition signature gathering imposed by the COVID-19 pandemic, continues to unduly burden and violate Plaintiffs' right to petition, speech, and free association protected by the First and Fourteenth Amendments to the Constitution of the United States, as applied. The requirements of the Defendant's executive order are not only difficult to achieve on their face, but unsafe and impossible amid the pandemic. If undisturbed, enforcement of Defendant Lamont's executive order will unduly and unjustifiably restrict Plaintiffs' First and Fourteenth Amendment rights.

13

58.     Defendant Lamont's executive order triggers strict scrutiny because of the burden they impose on Plaintiffs' associational rights, scrutiny that the order cannot survive. But under the circumstances of this case, including federal, state, and local shelter-in-place orders amid the COVID-19 pandemic, the executive order fails even rational basis review.

**Second Claim: Unconstitutional Abridgment of the First and Fourteenth Amendment to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983, for Enforcement of the Absentee Ballot Laws**

59.     The allegations above are incorporated as if included fully here.

60.     Voting and participating in the electoral process is a form of expression which is the ultimate form of political speech. In light of the Supreme Court's cases giving strong First Amendment protection to campaign funds spent to influence voters, the voters and their votes themselves can hardly be entitled to less protection.

61.     As a restriction on free speech and association, the Absentee Ballot Laws must therefore be judged under the standard of strict scrutiny, a scrutiny that the Absentee Ballot Laws cannot survive under ordinary circumstances, much less under the extraordinary circumstances of the COVID-19 pandemic.

62.     Restricting access to absentee ballots only to the six identified categories in Connecticut law is not necessary or narrowly-tailored to any compelling state interest. In fact, a compelling interest exists in reducing the in-person interactions required by mass in-person voting.

**Third Claim: Violation of Procedural Due Process for Vagueness in Violation of the Fourteenth Amendment to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983, for Enforcement of the Absentee Ballot Laws**

63.     The allegations above are incorporated as if included fully here.

64.     Should Defendant Lamont fail to act to expand absentee ballot eligibility, thousands of voters will be mailed absentee ballot applications by Defendant Merrill, which

they will be ineligible to complete. Completing the applications falsely could subject the voters to criminal prosecution.

65.     A restriction to the right to vote due to the vagueness of a statutory provision creates conditions on the right to vote that violates voters' Due Process rights.

66.     The Absentee Ballot Laws violate Plaintiffs and other voters' Due Process rights because the law, under the circumstances, fails to provide people of ordinary intelligence with a reasonable opportunity to understand whether or not they are permitted to vote by mail during the COVID-19 pandemic.

67.     The Absentee Ballot Laws also violate Plaintiffs and other voters' Due Process rights because the confusion that results amid the pandemic may encourage arbitrary and discriminatory enforcement, bar access to the right to vote, and increase the risk of criminal prosecution.

**Fourth Claim: Violation of the Fourteenth Amendment to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983, for Enforcement of the Absentee Ballot Laws**

68.     The allegations above are incorporated as if included fully here.

69.     The Absentee Ballot Laws violate the Fourteenth Amendment Equal Protection Clause because the state allows some voters to access absentee ballots but not others, treating similarly situated voters differently. Because of the pandemic, Plaintiffs are similarly situated to voters who are eligible for absentee ballots, but Plaintiffs are denied eligibility to vote absentee by Connecticut's Absentee Ballot Laws.

70.     No rational interest exists in putting citizens' health at risk in voting, rendering the state's activities in enforcing the Absentee Ballot Laws unconstitutional.

### F.      Prayer for Relief

WHEREFORE, the plaintiff respectfully requests the following relief:

A.  Certification under 28 U.S.C. §2403 and Fed. R. Civ. P. 5.1 that the constitutionality of a state statute has been questioned and certification of a class and subclass under Fed. R. Civ. P. 23(b)(2);

B.  *As to the First Claim,* issue a declaratory judgment stating that, in light of the current public health emergency caused by COVID-19 and executive orders requiring Connecticut citizens stay at home and shelter in place, Connecticut's in-person petition collection requirements for qualifying for the August 11, 2020 primary election ballot, as modified by Defendant Lamont's Executive Order No. 7LL, cannot be constitutionally enforced;

C.  *As to the First Claim*, a preliminary injunction (i) enjoining or modifying enforcement of Connecticut's in-person petition collection requirements for qualifying for the August 11, 2020 primary election ballot as modified by Defendant Lamont's Executive Order No. 7LL; (ii) enabling and requiring the Defendants to allow for petitions to be submitted electronically via names of qualified electors collected by an online form to be created by the Secretary of the State or by placing an electronic signature on an electronic form created by the candidates; (iii) extend the deadline for the collection of the names of qualified electors from June 11, 2020 to July 15, 2020; and (iv) reduce the number of signatures required to qualify for the offices of state representative or state senate on the primary ballot to one percent of the registered party members in the district or to some percentage of required signatures necessary to demonstrate a significant

modicum of public support in light of the cumbersome process imposed by Defendant Lamont's executive order;

D. *As to the Second through Fourth Claims,* declaratory judgment that enforcement of the Absentee Ballot Laws described above violate the Plaintiffs' rights under the Constitution of the United States as guaranteed by 42 U.S.C. § 1983, and an order allowing Defendants a reasonable but prompt amount of time to correct the violations;

E. *As to the Second through Fourth Claims*, in the event that a reasonable time elapses and no action is taken, an order in the nature of an injunction relieving the unconstitutionally unacceptable burdens imposed by the enforcement of the Absentee Ballot Laws;

F. *As to the Second through Fourth Claims*, appoint a Special Master or panel of Special Masters to find facts and make recommendations regarding the modification of the Absentee Ballot Laws;

G. Attorney's fees pursuant to 42 U.S.C. § 1988, and costs; and

H. Such other and further relief as the Court may deem proper.

Dated: May 12, 2020                              Respectfully Submitted,

                                                PLAINTIFFS, ANDY GOTTLIEB,
                                                LORNA CHAND, JASON BARTLETT,
                                                AND RICHARD LACOURCIERE, FOR
                                                THEMSELVES AND ALL OTHERS
                                                SIMILARLY SITUATED

By:_____/s/_____
Alexander T. Taubes, Esq.
Federal Bar No.: ct30100
Alexander T. Taubes
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com


*Their Attorney*