UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDY GOTTLIEB, ET AL., | : | CIVIL CASE NO. |
|     Plaintiffs, | : | 3:20-CV-0623 (JCH) |
| | : | |
| v. | : | |
| | : | |
| NED LAMONT, ET AL., | : | |
|     Defendants. | : | JULY 2, 2020 |
| | : | |

## RULING ON JASON BARTLETT'S
## MOTION FOR RECONSIDERATION (DOC. NO. 35)

### I. INTRODUCTION

On June 8, 2020, this court issued its Ruling denying plaintiffs' Motion for Preliminary Injunction. See Ruling (Doc. No. 33). In that Motion, plaintiffs challenged Connecticut's petition signature requirements for candidates attempting to petition onto the primary election ballot, and sought various injunctive relief including, inter alia, a reduction of the signature requirement and an extension of the deadline. See Motion for Preliminary Injunction (Doc. 9) at 3. Following oral argument, the court denied the Motion for Preliminary Injunction, and held that, because the reasonable and non-discriminatory regulations serve important government interests, plaintiffs had failed to show a clear or substantial likelihood of success on the merits. Ruling at 21.

On June 17, 2020, Plaintiff Jason Bartlett[1] ("Bartlett") filed a Motion for Reconsideration ("Mot.") (Doc. No. 35). For the reasons that follow, Bartlett's Motion is denied.

---

[1] The other plaintiffs do not join in Bartlett's Motion.

1

## II. STANDARD

The standard for granting a motion for reconsideration is strict. D. Conn. L. Civ. R. 7(c); see also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). The movant must "point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c); see also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

The Second Circuit has recognized three grounds justifying reconsideration: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted); see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). Similarly, motions for reconsideration do not allow parties to raise new arguments that could have been made earlier. See Belfiore v. Proctor & Gamble, Co., 140 F. Supp. 3d 241, 245

(E.D.N.Y. 2015) ("[A] party may not introduce new facts or raise new arguments that could have been previously presented to the court.").[2]

## III. DISCUSSION

Bartlett's Motion asserts two bases for reconsideration. First, Bartlett claims to present "new evidence not previously available during consideration of Plaintiffs' Motion for Preliminary Injunction." Mot. at 2. This evidence involves Bartlett's petitioning efforts. See id. at 3-4 ¶¶ 2-5, 8. Second, Bartlett asserts a new argument claiming that the witness signature requirements under Executive Order 7LL were confusing. See id. at 3 ¶¶ 6, 7. This confusion led Bartlett to submit petitions without the proper notarization, which were subsequently rejected by the Registrar of Voters. See id. at 3-4 ¶¶ 7, 9. Bartlett therefore moves the court to reconsider its Ruling and order the Secretary of State to accept his petition signatures despite the notarization requirement. Id. 5-6.

Bartlett's Motion fails to satisfy the "strict standard" that governs motions to reconsider. D. Conn. L. Civ. R. 7(c). As to the first ground for reconsideration, the "new evidence" Bartlett provides involving his petitioning efforts was previously available to him and his counsel. At the hearing on the Motion for Preliminary Injunction, the court provided plaintiffs a full opportunity to develop the record, specifically as it related to plaintiffs' petitioning efforts. Notably, Bartlett was present at the hearing, and at one point, the court instructed Plaintiffs' counsel to consult with Bartlett on an issue involving

---

[2] Local Rule 7(c) also requires that a motion for reconsideration be filed within seven days from the order from which relief is sought. D. Conn. L. Civ. R. 7(c)(1). Bartlett's Motion, which was filed on June 17, was not filed within seven days of the court's June 8 Ruling. Reconsideration of a prior decision, however, is within the discretion of the court. Discerning no prejudice suffered by the defendants, the court exercises its discretion to consider the merits of the Bartlett's Motion.

3

Bartlett's petitioning efforts. See Rough Transcript ("Rough Tr.") at 92:24–93:21. Despite the opportunities afforded to him, Bartlett declined to offer at the hearing, or at any time before the instant Motion, the evidence he offers here. See Mot. at 3-4 ¶¶ 2-5, 8.

Because the evidence involving Bartlett's petitioning efforts was previously available to him, this evidence is insufficient to satisfy the standard governing motions for reconsideration. See Rafter v. Liddle, 288 F. App'x 768, 769 (2d Cir.2008) (observing that motions for reconsideration "are not vehicles for taking a second bite at the apple . . . and [the court] [should] not consider facts not in the record to be facts that [it] overlooked"); see also In re Deutsche Bank AG Securities Litigation, No. 09-CV-1714, 2013 WL 12316343, at *2 (S.D.N.Y. May 15, 2013) ("All of the proposed evidence was available prior to the filing of the Clerk's Judgment on August 17, 2012, however, an important fact that precludes the Court from concluding that it was 'new' or 'newly discovered.'").

Bartlett's second ground for reconsideration pertains to his confusion regarding the witness signature requirements under Executive Order 7LL. See Mot. at 3 ¶¶ 6, 7. Specifically, Bartlett alleges that the Secretary of State's Primary Petition Ballot Access Guidance ("Guidance") (Doc. No. 35-1) led him to believe that the witness notarization requirements had been completely suspended for all signed petitions. See Mot. at 3 ¶ 6. In fact, the requirement had been suspended as to single signature petitions only. Id. at 3 ¶ 7; see also Guidance § III(7).

The court first notes that, as Bartlett recognizes, this issue is one that was "not contemplated in the original briefing." Mot. at 3 ¶ 6. While both Executive Order 7LL

4

and its Guidance were discussed extensively in the briefing and at oral argument, at no time did the plaintiffs rest their burden argument on the Guidance's alleged lack of clarity as to the need for witness notarization on multiple signature petitions. The Motion therefore presents the case "under [a] new theor[y]"; such an argument cannot support a motion for reconsideration. Analytical Surveys, Inc., 684 F.3d at 52.

Furthermore, the "new evidence" regarding the confusing nature of the Guidance could not "reasonably be expected to alter the conclusion reached by the court." Shrader, 70 F.3d at 257. In its June 8 Ruling, this court ruled that plaintiffs had not carried their burden in showing that the election laws impose a severe burden on their ballot access rights. See Ruling at 19. Nothing that Bartlett provides in his Motion causes the court to question this holding. Contrary to Bartlett's assertion, the Guidance is not confusing or misleading. The Guidance clearly stated that "[p]etitions signed by more than one enrolled party member must continue to comply with section 9-404b and 9-410 of the General Statute, notwithstanding Executive Order No. 7LL." Guidance § III(7); see also Executive Order 7LL ("If more than one signature is on a petition page, all the requirements of sections 9-404b and 9-410 of the General Statutes must be satisfied, provided that any existing Executive Orders governing remote notarizations may be utilized."). Section 9-410, in turn, contains the circulator witness requirement. See Conn. Gen. Stat. § 9-410(c). Bartlett's contention that the Guidance is confusing or misleading has no merit.

The court adheres to its June 8 Ruling. If Bartlett fails to qualify for the ballot, it will not be because the election laws unconstitutionally burden his First Amendment rights by "virtually exclud[ing]" him from the ballot. Libertarian Party of Kentucky v.

Grimes, 835 F.3d 570, 574 (6th Cir. 2016) (citing Lubin v. Panish, 415 U.S. 709, 719 (1974), Williams v. Rhodes, 393 U.S. 23, 24 (1968), and Jenness v. Fortson, 403 U.S. 431, 438 (1970)). Indeed, Bartlett submitted more signatures than the statute requires. See Mot. at 4 ¶ 8. In a similar way, if the Secretary of State determines these signatures to be invalid, it will not because the election laws or the Guidance were confusing or misleading. Instead, such a consequence would be the result of Bartlett's failure to abide by the clear language of Executive Order 7LL and its Guidance.

Because Bartlett has failed to provide the court with new evidence "that might reasonably be expected to alter the conclusion reached by the court," the Motion is denied. Shrader, 70 F.3d at 257.

## IV. CONCLUSION

For the reasons stated above, Bartlett's Motion for Reconsideration (Doc. 35) is denied.

**SO ORDERED.**

Dated this 2nd day of July 2020 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge