UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDY GOTTLIEB, et al., : | |
| : | Case No. 3:20-cv-623-JCH |
| *Plaintiffs,* : | |
| : | |
| v. : | |
| : | |
| NED LAMONT, et al., : | |
| : | |
| *Defendants.* : | September 4, 2020 |

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR DECLARATORY & INJUNCTIVE RELIEF**

1. This civil rights class action was brought May 6, 2020 to address violations of the First Amendment by Defendants' threatened enforcement, despite the COVID-19 pandemic, of Connecticut's strict state law requirements to (1) collect in-person petition signatures for ballot access and (2) vote in-person at polling places unless voters meet one of six statutory "excuses" that excluded thousands of voters including Plaintiffs.

2. On July 31, 2020, Defendant Governor Lamont signed into law HB 6002, passed by the General Assembly in special session. Plaintiffs therefore have withdrawn claims in this case related to the statutory "excuses" to allow voting by absentee ballot.

3. However, Connecticut's strict state law requirements for ballot access ("Ballot Access Laws") are still on the books.

4. Connecticut's Ballot Access Laws are the strictest in the country for access to the primary ballot for the state senate, and among the strictest in the country for access to the primary ballot for Governor and U.S. Congress.

5. "When a state-mandated primary is used to select delegates to conventions or nominees for office, the State is bound not to design its ballot or election processes in ways that

impose severe burdens on First Amendment rights of expression and political participation." *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 210, 128 S. Ct. 791, 801, 169 L. Ed. 2d 665 (2008) (Kennedy, J., concurring). Without this Court's intervention, Connecticut's Ballot Access Laws will continue to place an unconstitutional severe undue burden on candidates running for office in state primaries and party voters seeking to vote for the candidate of their choice.

6. As the Supreme Court of the United States has stated, "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). Although preliminary relief was denied with regard to the 2020 primary elections (or lack thereof), Plaintiffs, Connecticut voters, file this suit to force a resolution of this matter on its merits prior to the 2022 primary elections.

**A.   Parties**

7. Plaintiff Andy Gottlieb is a citizen of the State of Connecticut and a registered voter. Plaintiff Gottlieb wants to vote for a wider variety of candidates, but he is restricted from doing so by Connecticut's Ballot Access Laws, even as modified by Defendant Lamont's executive order. Plaintiff ran for state senate in 2018 but he fell short of ballot access by 32 signatures because of the Ballot Access Laws. Plaintiff would likely run again for state representative or state senator, but for the existence and likely enforcement of the Ballot Access Laws as modified by Defendant Lamont's executive order.

8. Plaintiff Lorna Chand is a citizen of the State of Connecticut and a registered voter. Plaintiff Chand wants to vote for a wider variety of candidates, but she is restricted from doing so by Connecticut's Ballot Access Laws as modified by Defendant Lamont's executive

order. Plaintiff Chand was Plaintiff Gottlieb's treasurer in the 2018 election, and was prevented from voting for the candidate of her choice, Plaintiff Gottlieb, because of the Ballot Access Laws.

9. Plaintiff Jason W. Bartlett is a citizen of the State of Connecticut and a registered voter. Plaintiff Bartlett is a candidate for the 10th State Senate District of the Connecticut General Assembly with significant support, but he failed to obtain ballot access by state party convention because of the severe burdens of Connecticut's Ballot Access Laws, even as modified by Defendant Governor Lamont's executive order as applied to the 2020 primary election.

10. Defendant Ned Lamont is the Governor of the State of Connecticut and its chief executive officer. He is sued in his official capacity.

11. Defendant Denise Merrill is the Secretary of the State of Connecticut. She is Connecticut's chief election official and is responsible for causing petitions for access to the ballot to issue under Connecticut State Law. She is sued in her official capacity.

**B.   Jurisdiction**

12. Because this action is brought pursuant to 42 U.S.C. § 1983, jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

13. Venue is proper in this Court by virtue of 28 U.S.C. § 1391 because the events giving rise to the claims occurred in the District of Connecticut and the defendants reside in the District of Connecticut.

14. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, as well as by Rules 23, 57 and 65 of the Federal Rules of Civil Procedure.

C.     **Factual Allegations**

    a)     **Ballot Access Laws**

15.     Connecticut General Statutes Section 9-400 allows a candidate for the office of state representative or state senator to qualify for the ballot for a political party's primary election in two ways: by receiving at least 15% of the votes of the delegates at a convention held by that political party; or by circulating a petition and obtaining the signatures of five percent of the enrolled members of the party in the district.

16.     The gathering of petition signatures is governed by Connecticut General Statutes Sections 9-404a to 9-404c, inclusive. Candidates are given until 4:00p.m. on the fourteenth day after petitions are made available to collect and submit signatures from five percent of the party members in the district.

17.     In 2018, Plaintiff Gottlieb and Plaintiff Chand were the candidate and the treasurer, respectively, of a campaign for state senate that failed to qualify for the ballot by convention and was required to collect the signatures of 1,014 registered Democrats, five percent of the registered Democrats in the district.

18.     Plaintiff Gottlieb's 2018 campaign turned in 1,120 signatures, of which 982 were found to be valid, 32 signatures short of ballot access.[1]

19.     Plaintiff Gottlieb would have had enough signatures to run for governor of Ohio, member of Congress from Pennsylvania, or U.S. Senator from Oregon, but Plaintiff Gottlieb were denied ballot access in the party primary. As a result, the candidate endorsed at convention

---

[1] Plaintiffs were 32 signatures short, according to the count of the registrars of voters in the municipalities of the district in which they were seeking office, Connecticut's Twelfth Senate District, comprising the towns of Madison, Guilford, Killingworth, Durham, Branford, and North Branford. However, upon information and belief, employees of Defendant Merrill sought to disqualify additional signatures, because the back of some of the pages of the petitions were allegedly incorrectly filled out by one of Plaintiffs' petition circulators.

ran unopposed, and Plaintiffs Gottlieb and Chand were denied the opportunity to vote for the candidate of their choice, a candidate with significant support.

20. In fact, Connecticut's Ballot Access Laws are among the strictest in the country.

21. The Ballot Access Laws do not burden all political groups equally.

22. Because incumbents have a well-developed network of campaign contributors, supporters well-versed in the process, the loyalty of party bosses, and the advantages of their official office, they almost always garner more than 15% of the delegates at state conventions, rarely need to gather signatures at all.

23. On the other hand, new candidates who are either challenging incumbents or running for a vacant seat – and who already face an uphill battle in getting on the ballot – will need to collect hundreds of signatures in order to qualify for ballot access in an unreasonably short period of time.

24. No rational reason exists for not making petitions available earlier in the election cycle to give candidates more time to demonstrate that they have a significant modicum of support among party voters. The irrationally short period of time in Connecticut's Ballot Access Laws for petition-gathering severely burdens the rights of party voters.

25. Because incumbents, in particular, are advantaged by the Ballot Access Laws, voters' right to vote for the candidate of their choice is severely restricted. When incumbents are more difficult to challenge, more run unopposed. Unopposed elections are very common in Connecticut, much more common than in places with less restrictive Ballot Access Laws, and in fact more common than almost anywhere in the country that has primary elections for state offices.

26. Access to the primary ballot is even more of an important fundamental constitutional right in a place like Connecticut, where one party has major control over the machinery of the state. In Connecticut, every U.S. Representative, Majority Leader or Officer of the State Legislature, and Statewide Constitutional Officer is a member of the Democratic Party. Connecticut has not elected a Republican to any of these offices in more than ten years, rendering primary ballot access even more important for voters' constitutional rights.

    **d)**     **Special Grounds for Injunctive Relief**

27. This Court concluded, almost twenty years ago, that the 15% convention delegate requirement, standing alone, likely fails to protect rights of free association of voters seeking to vote for the candidate of their choice. *Campbell v. Bysiewicz*, 213 F. Supp. 2d 152 (D.Conn. 2002) (*Dorsey, J.*). The remedy in that case came when the General Assembly created the ability to gather petition signatures. *See* Public Act 03-241 (creating petitioning system). But the remedy has proven toothless, because Connecticut's Ballot Access Laws remain among the strictest in the country.

**D.**     **Class Allegations**

28. Plaintiffs bring this case on their own behalf and on behalf of a class of all Connecticut voters who are registered members of the Democratic Party.

29. The class consists of thousands of people and is so numerous that joinder of all members is impracticable.

30. Plaintiffs' claims are common to and typical of the class and subclass, that is, the right of all members of the class to vote for candidates of their choice in Democratic Party primary elections is burdened by Connecticut's Ballot Access Laws.

31. Plaintiffs and their counsel will fairly and adequately protect the interests of the class and subclass. No conflicts of interest exist between Plaintiffs or their counsel and the class or subclass. Plaintiffs' counsel, Attorney Alexander T. Taubes, Esq., has done substantial work in identifying and investigating potential claims in this action; has experience in handling class actions, *Noble v. Northland*, UWY-CV16-6033559-S (Conn. Super. Ct.) (class counsel through investigation, discovery, motion practice, class certification, and settlement of class action on behalf of approximately 1,000 former residents of a New Haven public housing complex), other complex litigation, *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 473 (2d Cir. 2019) (argued and briefed Defendants' unsuccessful interlocutory appeal on justiciability grounds in novel reapportionment claim), and the types of claims asserted in the action, *Pereira v. State Elections Enforcement Comm'n*, HHB-CV19-6054160-S (Conn. Super. Ct.) (successful appeal reversing Election Commission decision on child care reimbursements); has knowledge of the applicable law; and resources that he will commit to representing the class and subclass. As a registered member of the Democratic Party in Connecticut, Plaintiffs' counsel is a class member.

32. Defendant Lamont and Defendant Merrill have acted or refused to act on grounds that apply generally to the class and subclass, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class and subclass as a whole.

**E.      Claims for Relief**

**First Claim: Unconstitutional Abridgment of the First and Fourteenth Amendments to the Constitution of the United States by Defendants Lamont and Merrill, pursuant to 42 U.S.C. § 1983 and *Campbell v. Bysiewicz*, for Enforcement of the Ballot Access Laws**

33.   The allegations above are incorporated as if included fully here.

34.   Connecticut's ballot access laws unduly burden and violate Plaintiffs' and class members' right to petition, speech, and free association protected by the First and Fourteenth Amendments to the Constitution of the United States, including by having a "chilling effect" on the ability of individuals such as Plaintiff Gottlieb to run for office in the first place.

35.   Connecticut's ballot access laws trigger strict scrutiny because of the burden they impose on Plaintiffs' associational rights, scrutiny that they cannot survive. But aspects of the laws, such as the irrationally late time when petitions are made available given the deadlines for collecting petition signatures, are so irrational that they fail even a rational basis review.

**F.      Prayer for Relief**

WHEREFORE, the plaintiff respectfully requests the following relief:

A. Certification under 28 U.S.C. §2403 and Fed. R. Civ. P. 5.1 that the constitutionality of a state statute has been questioned and certification of a class and subclass under Fed. R. Civ. P. 23(b)(2);

B. Issue a declaratory judgment stating that Connecticut's Ballot Access Laws are unconstitutional on their face and as applied to Plaintiffs and Class Members;

C. Issue an injunction enjoining or modifying enforcement of Connecticut's Ballot Access Laws to relieve Plaintiffs and class members of the unduly severe burden on their constitutional rights;

D. Attorney's fees pursuant to 42 U.S.C. § 1988, and costs; and

E.  Such other and further relief as the Court may deem proper.

Dated: September 4, 2020                               Respectfully Submitted,

                                                                      PLAINTIFFS, ANDY GOTTLIEB, LORNA CHAND, AND JASON BARTLETT, FOR THEMSELVES AND ALL OTHERS SIMILARLY SITUATED

By:_____/s/_____
Alexander T. Taubes, Esq.
Federal Bar No.: ct30100
Alexander T. Taubes
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com

*Their Attorney*